**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| NETCHOICE, LLC,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>DAVID ANTHONY YOST, in his official capacity as Ohio Attorney General,<br><br>*Defendant-Appellant*. | No. 25-3371 |

**MOTION TO EXTEND STAY OF MANDATE**

Pursuant to Federal Rule of Appellate Procedure 41(d) and Circuit Rule 41(a), NetChoice respectfully moves to extend the stay of mandate pending the filing and disposition of a petition for a writ of certiorari.[1] The state does not consent to this request.

1. On June 16, this Court reversed the district court's decision to permanently enjoin the state from enforcing Ohio's Parental Notification by Social Media Operators Act. Dkt.52. NetChoice sought en banc review, Dkt.58, which this Court denied on August 5. Dkt.59.

[1] Under Federal Rule of Appellate Procedure 41(b) and Circuit Rule 41(a), the filing of this motion automatically stays the mandate for "the time necessary for disposition of [this] motion seeking a stay."

2. On August 11, NetChoice filed a motion to stay the issuance of the mandate pending the filing and disposition of a petition for a writ of certiorari. Dkt.60. This Court granted the motion on August 17. Dkt.61. The Court's order stayed the mandate "to allow NetChoice, LLC time to file a petition for a writ of certiorari, and thereafter until the Supreme Court disposes of the case, but shall promptly issue if the petition is not filed within ninety days from the date of final judgment by this court." Dkt.61.

3. NetChoice's petition for certiorari was originally due on November 3. Dkt.61.

4. On October 19, NetChoice filed an application to extend the time to file a petition for a writ of certiorari from November 3 to December 3. *See* Exhibit A. Justice Kavanaugh granted the application. *See* Order, *NetChoice v. Yost*, No. 26A557 (U.S. Oct. 22, 2026).

5. Because NetChoice's petition for certiorari is now due December 3, NetChoice respectfully asks this Court to extend the stay of mandate to account for the new deadline and any future extension that the Supreme Court may grant. NetChoice respectfully asks for an order extending the stay of mandate "to allow NetChoice, LLC time to file a petition for a writ of certiorari, and thereafter until the Supreme Court disposes of the case, but shall promptly issue if the petition is not filed within the deadline set by the Supreme Court for filing the petition."

6. Counsel for NetChoice conferred with counsel for the state, who does not consent to this request.

Respectfully submitted,

s/Erin E. Murphy
ERIN E. MURPHY
CLEMENT & MURPHY, PLLC
706 Duke Steet
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiff-Appellant*

October 29, 2026

# CERTIFICATE OF COMPLIANCE
# WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 381 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

October 29, 2026

s/Erin E. Murphy
Erin E. Murphy

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Erin E. Murphy
Erin E. Murphy

# EXHIBIT A

**IN THE**
**SUPREME COURT OF THE UNITED STATES**

No. ___

NETCHOICE, LLC,

*Applicant*,

v.

DAVID ANTHONY YOST, in his official capacity as Ohio Attorney General,

*Respondent.*

**APPLICATION TO THE HON. BRETT M. KAVANAUGH FOR AN EXTENSION OF TIME WITHIN WHICH TO FILE A PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

Pursuant to Supreme Court Rule 13(5), Applicant NetChoice, LLC, hereby moves for an extension of time of 30 days, to and including December 3, 2026, for the filing of a petition for a writ of certiorari. Unless an extension is granted, the deadline for filing the petition for certiorari will be November 3, 2026.

In support of this request, Applicant states as follows:

1. The United States Court of Appeals for the Sixth Circuit rendered its decision on June 18, 2026 (Exhibit A) and denied a timely petition for rehearing *en banc* on August 5, 2026 (Exhibit B). This Court has jurisdiction under 28 U.S.C. §1254(1).

2. This case involves one of several recent state efforts to restrict minors from accessing "social media" websites. Ohio's Parental Notification by Social Media Operators Act ("HB33"), Ohio Rev. Code §1349.09, requires minors to obtain parental

consent before creating an account to access a slew of popular websites. HB33 sweeps in not only "social media" websites as that phrase commonly understood, but *any* website that allows users to "[i]nteract socially" and is "reasonably anticipated to be accessed by children." *Id.* §1349.09(A)-(B). In determining which websites are "reasonably anticipated to be accessed by children," HB33 states that "the attorney general … may consider" (among other things) the website's "[s]ubject matter," "[v]isual content," "[u]se of animated characters," "[m]usic or other audio content." *Id.* §1349.09(C). HB33 exempts websites where user interaction is limited to "[r]eviewing products" or "commenting on [others'] reviews," or "[c]omments incidental to content posted by an established and widely recognized media outlet, the primary purpose of which is to report news and current events." *Id.* §1349.09(*O*).

3. NetChoice filed this suit in January 2024 on behalf of its members, who operate several websites regulated by HB33. The district court granted summary judgment to NetChoice on its First Amendment claims. It concluded that HB33 triggers First Amendment scrutiny because it restricts access to protected expression, and that HB33 must survive strict scrutiny because it is facially content based. D.Ct.Dkt.56.at.30-40. It also held that HB33 flunks strict scrutiny because it is not remotely tailored: By its terms, HB33 sweeps in "thousands" of websites, like Dreamwidth and Goodreads, that no one has ever argued are harmful to minors. D.Ct.Dkt.56.at.43-44.

4. In a fractured set of opinions, the Sixth Circuit reversed. Judge Clay and Judge Batchelder each separately concluded that NetChoice lacks "prudential

standing" to assert the First Amendment rights of minors. Ex. A at 15-16 (Clay, J.); Ex. A at 46-47 (Batchelder, J.). But they nevertheless agreed that HB33 implicates the First Amendment and triggers heightened scrutiny. Ex. A at 17-18; Ex. A at 54; *accord* Ex. A at 66 (Ritz, J.). Judge Clay and Judge Ritz both recognized that HB33 triggers strict scrutiny because it is facially content based. Ex. A at 20-21; Ex. A at 66. Yet Judge Clay concluded that, despite its breadth, HB33 survives that exceedingly demanding test. Ex. A at 21-27. Judge Batchelder, without reaching the merits, rejected NetChoice's challenge on the grounds that it failed to prove its facial challenge because it did not compile a detailed record about each covered member, Ex. A at 53-55—a position both Judge Clay and Judge Ritz rejected, Ex. A at 26-27; Ex. A at 64-65. Because both Judge Clay and Judge Batchelder rejected NetChoice's challenge, the panel reversed.

5. The panel's decision is deeply flawed. One Justice has already concluded that laws like HB33 are "likely unconstitutional." *NetChoice v. Fitch*, 145 S.Ct. 2658 (2025) (Kavanaugh, J., concurring in the denial of the application to vacate stay). So have a slew of jurists across the country in enjoining laws like HB33. *NetChoice v. Jones*, 822 F.Supp.3d 656 (E.D. Va. 2026), *appeal filed*, No. 26-1252 (4th Cir.); *NetChoice v. Murrill*, 812 F.Supp.3d 594 (M.D. La. 2025), *appeal filed*, No. 26-30016 (5th Cir.); *NetChoice v. Hilgers*, 2026 WL 1850018 (D. Neb. 2026), *appeal filed*, No. 26-2478 (8th Cir.); *NetChoice, LLC v. Griffin*, 2025 WL 978607 (W.D. Ark. Mar. 31, 2025), *appeal filed* No. 25-1889 (8th Cir); *NetChoice, LLC v. Reyes*, 748 F.Supp.3d 1105 (D. Utah 2024), *appeal filed* No. 24-4100 (10th Cir.); *cf. CCIA v. Paxton*, 747

F.Supp.3d 1011 (W.D. Tex. 2024), *aff'd on other grounds*, 184 F.4th 420 (5th Cir. 2026); *but see NetChoice v. Att'y Gen., Ga.*, 2026 WL 3079563 (11th Cir. Oct. 15, 2026); *CCIA v. Uthmeier*, 2026 WL 3071065 (11th Cir. Oct. 14, 2026); *NetChoice v. Fitch*, 2025 WL 2078435 (5th Cir. July 17, 2025) (staying preliminary injunction). As Justice Kavanaugh explained, laws like HB33 are exceedingly difficult to reconcile with "this Court's precedents." *Fitch*, 145 S.Ct. 2658. "'[W]hatever the challenges of applying the Constitution to ever-advancing technology, the basic principles' of the First Amendment 'do not vary.'" *Moody v. NetChoice*, 603 U.S. 707, 733 (2024). That includes the principle "that all persons have access to places where they can speak and listen." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017). This Court has been emphatic that those places include the "vast democratic forums of the Internet." *Id.* The First Amendment thus limits the government's power to restrict access to "social media" websites, even when its ostensible aim is to protect minors. *Id.* at 106-08.

6. Those same principles apply in full measure to minors who seek access to those websites. The "values protected by the First Amendment are no less applicable when government seeks to control the flow of information to minors." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 214 (1975). Just as the First Amendment "limits [the government's] power" when it "undertakes selectively to shield the public from some kinds of speech," it also prohibits the government from suppressing speech "to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Id.* at 209, 213-14. Applying those principles, this Court

has routinely struck down government efforts to protect minors for purportedly harmful speech on new forms of media—including by requiring minors to obtain parental consent before accessing such speech. In *Brown v. Entertainment Merchants Association*, for example, the Court held a California law prohibiting the sale of violent video games to minors facially unconstitutional under the First Amendment. 564 U.S. 786, 804-05 (2011).

7. HB33 should meet the same fate. As all members of the panel recognized, HB33 triggers First Amendment scrutiny. Ex. A at 17-18 (Clay, J.); Ex. A at 54 (Batchelder, J.); Ex. A at 66 (Ritz, J.). And as Judge Clay and Judge Ritz correctly recognized, HB33 triggers strict scrutiny because it is facially content based. Ex. A at 20-21 (Clay, J.); Ex. A at 66 (Ritz, J.). As this Court made clear just last year, that test is "fatal in fact absent truly extraordinary circumstances." *FSC v. Paxton*, 606 U.S. 461, 484-85 (2025). It is hard to fathom how HB33 could surmount that high hurdle. The law restricts access to massive quantities of constitutionally protected speech and prevents minors from exercising precisely the rights this Court has held protected. And as Judge Clay acknowledged, *see* Ex. A at 30-31, HB33 is not even limited to the traditional "social media" websites like Instagram and TikTok with which the state has principally expressed concerns; it reaches virtually all websites that minors are likely to access, including services like Dreamwidth and Goodreads—websites that no one claims cause any harm to minors.

8. Judge Batchelder's conclusion that NetChoice failed to satisfy its burden to prove that HB33 is facially unconstitutional is likewise flawed. HB33 "raises the

same First Amendment issues" in "every application," Ex. A at 65 (Ritz, J.), since HB33, by its terms, burdens users' access to *only* those websites where they "[i]nteract socially" and "[c]reate or post content viewable by others," Ohio Rev. Code §1349.09(A)(1)(a), (d)—*i.e.*, engage in and access protected speech. If Ohio passed a law requiring minors to obtain parental consent before obtaining library cards, a challenger would not have to produce a massive record about every minor, every book, and every page in every book found in any library in the state just to mount a facial challenge to that facial restriction on protected speech. That would be true even though some books inevitably contain material that is unprotected as to minors, as the law would still implicate speech in all its applications, and the lack of tailoring would be glaring no matter what level of scrutiny applied. In *Brown*, for instance, the Court did not demand a catalog of the entire universe of covered games, even though some video games covered by the law likely included speech that is unprotected as to minors. *See* 564 U.S. at 857 (Breyer, J., dissenting) (describing video game with obscenity); *id.* at 818-19 (Alito, J., concurring in the judgment) (same). It sufficed that the statute on its face restricted access to an entire category of speech that was not itself unprotected and that the state could not justify such a sweeping restriction.

9. Judge Batchelder concluded otherwise because she believed that she had to ignore HB33's burdens on users altogether because (in her view) NetChoice lacks "prudential standing" to assert the First Amendment rights of its members' users. Ex. A at 46-47 (Batchelder, J.). Judge Clay thought the same. Ex. A at 15-16

(Clay, J.). That holding squarely conflicts with the Fifth Circuit's decision in *NetChoice v. Fitch*, 134 F.4th 799, 802-03, 806-07 (5th Cir. 2025), which rejected a similar prudential standing argument in response to NetChoice's First Amendment challenge to an analogous Mississippi law. It is also wrong. This is not a case in which plaintiffs with no Article III standing have tried to "establish an Article III case or controversy by asserting another person's rights." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 398 (2024) (Thomas, J., concurring). Nor is it a case in which plaintiffs with no First Amendment rights seek to bring a First Amendment claim on behalf of third parties. *See Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 955-56 (1984); *cf. Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). NetChoice invokes users' rights because they are a necessary component of the requisite First Amendment inquiry into whether HB33 "burden[s] substantially more speech than necessary to achieve the [government's] asserted interests." *McCullen v. Coakley*, 573 U.S. 464, 490 (2014). To conduct that analysis, a court must "look[] beyond the plaintiff's particular conduct." *Hodge v. Talkin*, 799 F.3d 1145, 1156-57 (D.C. Cir. 2015). Indeed, this Court has routinely considered third parties' First Amendment rights without analyzing "third-party standing." In *Brown*, the only parties were associations of vendors who wanted to sell violent video games to minors. This Court recognized that the law implicated their First Amendment rights to do so. 564 U.S. at 790-92 & n.1. But the bulk of its analysis focused on minors' rights—because they were essential to the ultimate constitutional question.

10. Lower courts are sharply divided on these exceptionally important questions. More than a dozen states have enacted laws restricting minors from accessing "social media." And district courts throughout the country have held that those laws violate the First Amendment—which Justice Kavanaugh observed is "no surprise" since they are "likely unconstitutional." *Fitch*, 145 S.Ct. 2658; *see Jones*, 822 F.Supp.3d 656, *appeal filed*, No. 26-1252 (4th Cir.); *Murrill*, 812 F.Supp.3d 594, *appeal filed*, No. 26-30016 (5th Cir.); *Hilgers*, 2026 WL 1850018, *appeal filed*, No. 26-2478 (8th Cir.); *Griffin*, 2025 WL 978607, *appeal filed* No. 25-1889 (8th Cir); *Reyes*, 748 F.Supp.3d 1105, *appeal filed* No. 24-4100 (10th Cir.); *cf. Paxton*, 747 F.Supp.3d 1011, *aff'd on other grounds*, 184 F.4th 420 (5th Cir. 2026). Nevertheless, the decisions of the Sixth Circuit below and the Eleventh Circuit in a similar challenge, *see NetChoice v. Att'y Gen., Ga.*, 2026 WL 3079563, underscore that the lower courts are in serious disarray about how to properly apply this Court's precedents to state efforts to prevent minors from accessing constitutionally protected speech on the Internet. Applicant's petition will offer this Court an opportunity to bring clarity to these issues and reaffirm core First Amendment principles.

11. Applicant's counsel, Paul D. Clement, has substantial briefing and argument obligations between now and November 3, including an opening brief in *Plaquemines Parish v. Chevron USA, Inc.*, No. 24-30029 (5th Cir.) (due Oct. 28, 2026); oral argument in *United States v. Russell*, No. 25-2004 (4th Cir.) (Oct. 30, 2026); and oral argument in *Wesco v. 2026 Noteholders*, No. 26-20018 (5th Cir.) (Nov. 2, 2026).

12. Applicant's counsel thus requests a modest extension to prepare a petition that will best present the issues for this Court's review

WHEREFORE, for the foregoing reasons, Applicant requests that an extension of time to and including December 3, 2026, be granted within which Applicant may file a petition for a writ of certiorari.

Respectfully submitted,

PAUL D. CLEMENT
*Counsel of Record*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Applicant*

October 19, 2026